UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MELVIN X. LINDSAY,** : | |
| **Plaintiff** : | |
| | **CIVIL ACTION NO. 1:10-1851** |
| v. : | |
| | **(CALDWELL, D.J.)** |
| **RAY EARLSTON, et al.,** : | **(MANNION, M.J.)** |
| **Defendants** : | |

## REPORT AND RECOMMENDATION[1]

Presently before the court is the defendants' unopposed motion for summary judgment. (Doc. No. 18). Based upon the court's review of the motion and related materials, it is recommended that the motion be granted.

By way of relevant background, on September 2, 2010, the plaintiff, an inmate at the State Correctional Institution, Huntingdon, ("SCI-Huntingdon"), Pennsylvania, filed the instant civil rights action pursuant to 42 U.S.C. §1983. (Doc. No. 1). On the same day, the plaintiff submitted the appropriate application to proceed *in forma pauperis*, (Doc. No. 2), and authorization form, (Doc. No. 3). As a result, an administrative order was issued directing the warden/superintendent at SCI-Huntingdon to deduct the proper filing fees for

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

the instant action from the plaintiff's inmate account. (Doc. No. 5).

By order dated October 5, 2010, it was directed that process issue. (Doc. No. 8). An answer to the plaintiff's complaint was filed on December 13, 2010. (Doc. No. 13).

After having been granted an extension of time to do so, (Doc. No. 17), on July 29, 2011, the defendants filed the instant motion for summary judgment, (Doc. No. 18), along with a statement of material facts, (Doc. No. 19), supporting exhibits, (Doc. No. 20), and a supporting brief, (Doc. No. 21). Despite having been granted two extensions of time to do so, (Doc. No. 24, Doc. No. 26[2]), the plaintiff has failed to file materials opposing the defendants' motion for summary judgment. The motion will, however, be reviewed pursuant to the provisions of Stackhouse v. Mazurkiewicz, 951 F.2d 29 (3d Cir. 1991).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

---

[2]According to the most recent order, the plaintiff's opposing materials were due on or before October 19, 2011.

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson

3

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

In his complaint, the plaintiff alleges violations of his rights under the First Amendment as well as the Religious Land Use and Institutionalized Persons Act of 2000, ("RLUIPA"), 42 U.S.C. §§2000cc, et seq. Specifically, the plaintiff alleges that several incidents which occurred at SCI-Huntingdon violated his rights, including: (1) in July 2009, the plaintiff was questioned by defendant Morrison about reports that the plaintiff was referring to staff members by name during his Nation of Islam, ("NOI"), meetings with inmates, that he was ordered to stop doing so, and that he was threatened with a misconduct if he did not; (2) defendant Earlston allegedly reported the plaintiff's comments about the staff member in an attempt to have the plaintiff placed in the restricted housing unit, ("RHU"), as a form of retaliation for the

plaintiff's exercise of his right to free speech; (3) defendant Earlston allegedly made disparaging remarks to other staff members about African-American inmates with dread locks; (4) defendant Earlston refused to have inmate clerks work for him; (5) defendant Earlston refused to air a videotape by a minister of the NOI for inmates to watch; (6) officials at SCI-Huntingdon failed to comply with Department of Corrections, ("DOC") policy 819, which provides for videotaping formal religious services which are then aired on the institutional channel; and (7) the practice of allowing the NOI inmates to participate in a December fast and feast separate from other Muslim inmates was discontinued. Based upon these claims, the plaintiff is seeking injunctive relief as well as compensatory damages.

In response to the allegations set forth in the plaintiff's complaint, the defendants have submitted a statement of materials facts supported by the record which demonstrate that defendant Earlston is employed as a Chaplain at SCI-Huntingdon and has been with the Department of Corrections, ("DOC"), for fourteen years. At all times relevant to the plaintiff's complaint, defendant Earlston was the Chaplaincy Program Director at SCI-Huntingdon. As such, one of his responsibilities was to plan and conduct new employee orientation presentations. Another was to oversee worship services,

religiously oriented classes, and other religious materials disseminated to the inmate population.

At SCI-Huntingdon, NOI inmates have time allotted for a study group. On July 1, 2009, during an NOI study group, defendant Earlston overheard the plaintiff making comments about a staff member. Defendant Earlston believed that the plaintiff's comments were questionable and could be construed to constitute a threat to a staff member. Given this, he reported the incident to the Security Office.

In May 2009, defendant Earlston participated in a new employee orientation, during which he explained the duties of a chaplain and the place of religion in the institution's treatment program. In doing so, defendant Earlston cautioned the new staff in their dealings with inmates because some could be manipulative. As an example, he explained the institution's religious based hair length exemption policy and how some inmates with dread locks try to manipulate this policy indicating that these inmates sometimes claim it is against their religion to cut their hair until they return to Africa.

Another responsibility of the chaplain is to supervise subordinate chaplaincy personnel and make recommendations on personnel matters. Although defendant Earlston makes personnel recommendations, he does not

have the authority to hire paid inmate clerks. These decisions are made by Centralized Services based upon the recommendation of the Security Office.

Defendant Earlston has the duty to review all videotapes for content prior to their being shown on the institution's video channel. In June 2010, defendant Earlston misunderstood a direction he received from the Security Office. He thought he was to deny the showing of any videos in which Minister Louis Farrakhan, national leader of the NOI, was making remarks. He denied the showing of one such video before being made aware of the misunderstanding. The video was then shown at a later date.

Defendant Morrison is employed as a Correctional Officer III at SCI-Huntingdon and has been with the DOC for eighteen years. At all times relevant to the plaintiff's complaint, defendant Morrison was assigned to the Security Office. One of defendant Morrison's responsibilities was to coordinate and conduct intelligence gathering on any matter that could be a threat to the staff or institution.

On July 1, 2009, the Security Office received a report from defendant Earlston who had overheard the plaintiff making comments about a staff member during an NOI study group and was concerned that these comments could be misconstrued by the inmates and constitute a threat to the staff

7

member. The Security Office agreed with defendant Earlston's concerns and defendant Morrison requested the plaintiff to come to the Security Office to discuss the report. The plaintiff admitted that he made the comments about a staff member at an NOI study group. Defendant Morrison ordered him to cease making any such comments and informed the plaintiff that, if he disobeyed the order, he could receive a misconduct report and disciplinary custody time. Defendant Keller is employed as a Classification and Program Manager at SCI-Huntingdon and has been with the DOC for twenty-four years. One of defendant Keller's responsibilities is to address inmate grievances.

On July 22, 2009, the plaintiff filed Grievance No. 282611. The grievance stemmed from the incident that occurred on July 1, 2009, when defendant Earlston reported the plaintiff's comments to the Security Office. On August 5, 2009, defendant Keller responded to the grievance indicating that he had investigated the matter by speaking with defendant Earlston and security staff. Defendant Keller indicated that he believed reporting such incidents constituted good security practices and that information that is questionable and could be construed to constitute a threat to any individual must be reported and investigated. In addition, defendant Keller indicated that

time allotted to the NOI to meet was considered study time, not an officially sanctioned religious service, and that the institution was under no obligation to make a recording of the study group meeting. The plaintiff's grievance was denied.

In June 2010, defendant Earlston informed the plaintiff that any videos in which Minister Louis Farrakhan, national leader of the NOI, was making remarks would no longer be aired over the institution's channel. On July 8, 2010, the plaintiff filed Grievance No. 325607, in regard to the denial of the videos. Defendant Keller responded to this grievance the same day indicating that he discussed the plaintiff's concerns with defendant Earlston, Major Wakefield and Mr. Frailey, the Activities Manager, and that it was discovered that defendant Earlston had misunderstood the direction he received from Major Wakefield. Defendant Earlston was directed to personally review all videotapes before they aired on the institutional channel. He was to make sure that there was no prohibited or offensive content on these videos; however, he was not told to deny all videos in which Minister Farrakhan was making remarks. The grievance was therefore considered resolved.

Defendant Klemm is employed by the DOC as the Administrator for Religion, Volunteer, and Recreational Services and has been with the DOC

since April 2004. One of defendant Klemm's responsibilities is to provide direction and consultation to deputy secretaries and institutional superintendents/directors concerning the organization and operation of chaplaincy programs.

In December 2005, the NOI had a separate December fast and feast at SCI-Huntingdon; however, in December 2006, due to the limited number of NOI inmates that participated in the previous two years and the challenges posed by having a separate fast and feast, it was determined that NOI inmates would fast with the Sunni community and there was one common feast. This was necessitated by the need to maintain the required security staff at such functions while attempting to meet the religious needs of the Muslim inmates. In addition, Minister Farrakhan had encouraged the followers of NOI to fast during Ramadan and not during December.

The defendants argue in the instant motion that summary judgment should be granted in their favor because the undisputed material facts demonstrate that the plaintiff's rights have not been violated under either the RLUIPA or the First Amendment. The court agrees.

The RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in

or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §2000cc-l(a).

To prevail on a claim under RLUIPA, an inmate must initially establish that he possesses a sincerely held, authentic religious belief, the exercise of which the government has substantially burdened. See Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005). While "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion, see 42 U.S.C. §2000cc–5(7)(A), the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." Id.

To state a claim under RLUIPA, an inmate bears the *prima facie* burden of showing that a prison policy or practice has substantially burdened the practice of his religion. 42 U.S.C. §2000cc–2(b); Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007). The Third Circuit has adopted the following definition of "substantial burden" in this context:

> For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his

11

religion in order to receive a benefit; or 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

Washington, 497 F.3d at 280.

If an inmate proves that the government substantially burdened the exercise of a sincerely held religious belief, the burden then shifts to the government to demonstrate that the burden was imposed both in furtherance of a compelling government interest and represents the least restrictive means of furthering that compelling government interest. See Washington, 497 F.3d at 282. In making this determination, the court is to give "'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" Id. (citations omitted).

In this case, there is no indication from the record that the defendants substantially burdened the plaintiff's exercise of his religion with respect to any of the incidents set forth by the plaintiff in his complaint. Specifically, concerning the incident in July 2009 wherein the plaintiff was directed not to specifically talk about individual staff members during NOI staff meetings, there is no indication that this direction placed any restriction on the plaintiff's

exercise of his religion, as he was not restricted from attending or participating in the NOI study groups, but only directed to cease discussing individual staff members during those sessions. Moreover, even if this could somehow be considered related to the content of the NOI study group, the defendants' materials sufficiently indicate that such restrictions are legitimately related to security concerns and are the least restrictive means of furthering those interests.

Moreover, to the extent that the plaintiff alleges that defendant Earlston made disparaging remarks about African-American inmates with dread locks, such remarks clearly did not place any restrictions on the plaintiff's practice of his religion. In addition, any such remarks, without more, would not be actionable by way of a §1983 action. See Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973). See also Balliet v. Whitmire, 626 F.Supp. 219, 228-29 (M.D.Pa.) ("verbal abuse is not a civil rights violation"), *aff'd*, 300 F.2d 1130 (3d Cir. 1986).

The record also indicates that the plaintiff's claim that defendant Earlston would not hire inmate clerks was in no way a violation of the plaintiff's rights. Initially, the record demonstrates that defendant Earlston had no authority to hire inmate clerks. Moreover, as with the previous claim,

13

whether or not defendant Earlston could hire inmate clerks had no impact on the plaintiff's practice of his religion. Finally, even if defendant Earlston had the authority to hire inmate clerks, as set forth by the defendants, his failure to do so is not actionable by way of a §1983 action since inmates have no constitutional right to hold any particular job in prison. See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989). See also Bartley v. Smith, 2007 WL 405941, *3 (M.D.Pa.).

With respect to the plaintiff's claim that defendant Earlston refused to air a videotape by a minister of the NOI for inmates to watch, the record reflects that this was the result of a misunderstanding which was a one-time incident, and that the videotape was shown when the matter was reviewed. There is no indication, therefore, that this incident substantially restricted the practice of the plaintiff's religion.

Concerning the plaintiff's claim that the defendants failed to comply with DOC policy 819 which provides for videotaping formal religious services which are then aired on the institutional channel, the defendants' materials provide that the NOI meetings are not a formal religious service, but only a study group. As such, they are not subject to the provisions of DOC policy 819. Moreover, there is no indication that the defendants' failure to videotape and

air such meetings, of which the plaintiff was in attendance, substantially restricted the plaintiff's practice of his religion.

Finally, with respect to the plaintiff's claim that the practice of allowing NOI inmates to participate in a December fast and feast separate from other Muslim inmates was discontinued, the record demonstrates that the national minister for the NOI encouraged NOI follows to fast during Ramadan and not in December indicating that no substantial burden was placed on the practice of the plaintiff's religion. Moreover, even to the extent that the plaintiff could argue that this placed a substantial burden on the practice of his religion, the record demonstrates that this action was taken due to the security challenges posed by having a separate fast and feast for each of the Muslim groups.

In light of all of the above, the record demonstrates that the defendants are entitled to summary judgment with respect to the plaintiff's RLUIPA claim.

To the extent that the plaintiff is alleging a First Amendment free exercise claim, prisoners must be afforded "reasonable opportunities" to exercise the religious freedom guaranteed by the First and Fourteenth Amendments to the [United States Constitution. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)](). Even so, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by

the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quotations omitted). In Shabazz, the Supreme Court determined that prison regulations that allegedly infringe upon an inmate's "religious" rights as protected by the First Amendment must be reviewed under a "reasonableness" test that is less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. Id. In so concluding, the Court held that when a prison regulation impinges on inmates' constitutional rights "the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 349.

In considering a First Amendment free exercise claim, it is the plaintiff who bears the burden of persuasion. See Beard, 548 U.S. at 529 (citing Overton v. Bazzetta, 539 U.S. 126, 132 (2003) ("The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.") Moreover, the court accords great deference to prison administrators in the adoption and execution of policies and practices that are necessary to preserve internal order and to maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 527 (1979).

Here, as discussed above in relation to the plaintiff's RLUIPA claim, there is no indication that any of the actions alleged to have been taken by the

16

defendants infringed upon the plaintiff's constitutional right to practice his religion. Moreover, even assuming that the defendants' action did so, as discussed above, the defendants have presented evidence that their actions were reasonably related to valid penological objectives. As such, the defendants are also entitled to summary judgment with respect to the plaintiff's First Amendment free exercise claim.

Finally, to the extent that the plaintiff alleges that defendant Earlston retaliated against him by reporting his comments about a staff member during an NOI meeting to the Security Office, a prisoner must prove three things in order to establish a retaliation claim: (1) that he had engaged in a constitutionally protected activity; (2) that he suffered "some adverse action" at the hands of a prison official; and (3) that there is "a causal link between the exercise of [the] constitutional right[ ] and the adverse action taken." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Here, there is no evidence on the record that the plaintiff's comments regarding the individual staff member at the NOI meeting constituted constitutionally protected activity. "Free speech is not absolute at all times and under all circumstances." Chaplinsky v. State of New Hampshire, 315 U.S. 568, 571-72 (1942). A prisoner's exercise of his First Amendment freedoms

may be curtailed if such speech poses "the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 132 (1977). In this case, prison officials determined that the content of the plaintiff's comments could be construed to be a threat to the staff member and constituted a security concern. Given the nature of the comments, there is no indication that the plaintiff engaged in constitutionally protected activity. Therefore, the defendants are entitled to summary judgment with respect to this claim.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

the defendants' motion for summary judgment, **(Doc. No. 18)**, be **GRANTED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date: January 13, 2012**
O:\shared\REPORTS\2010 Reports\10-1851-01.wpd